UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| DELVIN HAYES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:26-cv-01028-MMM |
| | ) | |
| GRITTON, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Plaintiff, proceeding pro se under 42 U.S.C. § 1983, presently incarcerated at Pontiac Correctional Center, asserts claims based on occurrences during his imprisonment at Pontiac Correctional Center.

A. <u>Motion to Request Counsel</u>

The Court undertakes a two-part inquiry: (1) whether the plaintiff made a reasonable attempt to obtain counsel or has been effectively precluded from doing so, and, if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself. *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir 2007).

Plaintiff has shown a reasonable effort to find his own attorney.

Plaintiff is seriously mentally ill and due to his placement in the Behavioral Management Unit his law library access is limited. He experiences difficulty due to his history of burns. He has no legal training or knowledge. His case may involve expert testimony related to medical care issues.

Page **1** of **7**

Plaintiff's request is conditionally granted. The Court will refer this case to the Pro Bono Coordinator to try to find an attorney for Plaintiff. Plaintiff must understand that there are many more requests for assistance than there are attorneys willing to volunteer to take on such cases. If no attorney is willing to represent Plaintiff, then Plaintiff will have to represent himself.

B. <u>Merit Review Order</u>

The case is before the Court for a merit review. The Court must identify and dismiss any legally insufficient claim, or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.*

The Court accepts the factual allegations as true, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). Conclusory statements and labels are insufficient—the facts alleged must "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

Plaintiff names as Defendants Correctional Officers Gritton, Trevino, and Ajagbe, Correctional Sergeant Harcar, Correctional Lieutenant Ramey, and Nurse Chelsea and Dr. Alford.

The allegations relate to the events of September 19, 2024.

Trevino was escorting Plaintiff related to a dressing change on his leg, and made comments about Plaintiff not wanting his leg anymore because Plaintiff had self-

harmed. Plaintiff objected that this was a serious medical issue. Trevino then aggressively gripped Plaintiff's arm and shoulder, so tightly that Plaintiff heard his bones pop and felt unbearable pain, while commenting to Plaintiff, "ok Hayes, we're going to be on that today." Trevino lessened his use of force so Nurse Chelsea could change Plaintiff's dressing.

As Trevino, Gritton, and Harcar escorted Plaintiff back to his cell, they said they were going to beat his ass because he had self-harmed. Inmates asked why the guards were threatening Plaintiff. Plaintiff said, "I don't know bro, he on some bullshit."

During the following events Plaintiff never resisted or made any aggressive gestures. Trevino began aggressively pushing Plaintiff, repeatedly tried to grab his legs and pick him up, then the entire group fell onto a table. Gritton and Trevino picked Plaintiff up and slammed him headfirst, busting open his head, causing significant bleeding. Plaintiff heard his neck crack. He felt unbearable pain. Harcar was present and did nothing to prevent the excessive use of force. Gritton and Trevino dropped their body weight on top of Plaintiff, kneed his back and neck, and prevented Plaintiff from breathing. He again heard his neck cracking. The whole gallery was yelling at the officers to get off Plaintiff. Lieutenant Ramey came on the gallery and told them to get off Plaintiff and then they stopped, grabbed him off the ground, and took him to the holding tank.

Nurse Chelsea came in the holding tank, asked what happened, Plaintiff told her, she said I cannot do anything for you, I have to call the doctor. Chelsea could see the blood coming out of Plaintiff's head. Lt. Ramey pulled Chelsea aside as she went to get

the doctor, said something to her, and Chelsea then came back in, apologized to Plaintiff, and said Plaintiff was medically cleared to return to his cell.

Plaintiff was escorted back to his cell.

He was in a lot of physical pain and discomfort. He then suffered a mental breakdown. He became increasingly mentally unstable, felt that his neck was broken, was in pain, and needed medical attention. So, he set his belongings on fire. It is unclear how he was able to set the fire.

Correctional Officer Ajagbe said to Plaintiff that he wished Plaintiff would die, and said, "I'm not calling no code, you just going to set there on fire you think you going to tell on Trevino, Gritton," then he closed the fire door and left Plaintiff in his burning cell. Plaintiff sat in the cell for 15 to 20 minutes before he was removed from the cell. Plaintiff's leg was on fire and had plastic, a shirt, and tissue burned into it.

Plaintiff was taken to a hospital for his severe burns. While at the hospital Plaintiff reported the physical injuries from earlier that day. The hospital staff did assessments and took CT scans and an X-Ray. Plaintiff's neck was broken and due to his severe injuries, the following day, on September 20, he had to be transported by ambulance to another hospital for a higher level of care.

He was hospitalized for months and required multiple surgeries.

Plaintiff is still dealing with mental health issues, has been on suicide watch more than ten times since this incident, experiences inability to sleep, experiences nightmares, suffers from permanent disfigurement, has screws placed in his neck, and has permanent nerve damage.

Plaintiff's complaint states Eighth Amendment claims for excessive force and failure to intervene against Trevino, Gritton, and Harcar. He states an Eighth Amendment claim for deliberate indifference to a serious risk of physical harm against Ajagbe. He states an Eighth Amendment claim for denial of medical care against Lieutenant Ramey and Nurse Chelsea.

His allegations do not indicate personal involvement or wrongdoing by Dr. Alford, who will be dismissed.

IT IS THEREFORE ORDERED:

1. **Plaintiff's Motion to Request Counsel [4], [7] is conditionally GRANTED and the Clerk is directed to inform the Pro Bono Coordinator of this referral. Plaintiff remains responsible for all Court deadlines.**

2. **Pursuant to its merit review of the Complaint under 28 U.S.C. § 1915A, the Court finds that the plaintiff states Eighth Amendment claims for excessive force and failure to intervene against Trevino, Gritton, and Harcar. Plaintiff states an Eighth Amendment claim for deliberate indifference to a serious risk of physical harm against Ajagbe. Plaintiff states an Eighth Amendment claim for denial of medical care against Lieutenant Ramey and Nurse Chelsea. Plaintiff's allegations do not indicate personal involvement or wrongdoing by Dr. Alford, and the Clerk is to dismiss Alford as a Defendant. Any additional claims and parties shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown, or pursuant to Federal Rule of Civil Procedure 15.**

3. **This case is now in the process of service. The plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give notice to the defendants and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. The plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the court.**

4. **The court will attempt service on the defendants by mailing each defendant a waiver of service. If a defendant fails to sign and return a waiver of service to the clerk within thirty days after the waiver is sent, the**

court will take appropriate steps to effect formal service through the U.S. Marshals service on that defendant and will require that defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

5. With respect to a defendant who no longer works at the address provided by the plaintiff, the entity for whom that defendant worked while at that address shall provide to the clerk said defendant's current work address, or, if not known, said defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the clerk and shall not be maintained in the public docket nor disclosed by the clerk.

6. The defendants shall file an answer within 60 days of the date the waiver is sent by the clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this opinion. In general, an answer sets forth the defendants' positions. The court does not rule on the merits of those positions unless and until a motion is filed by the defendants. Therefore, no response to the answer is necessary or will be considered. After the defendants have been served and have answered, the court will enter an order setting discovery and dispositive motion deadlines.

7. This district uses electronic filing, which means that, after defense counsel has filed an appearance, defense counsel will automatically receive electronic notice of any motion or other paper filed by the plaintiff with the clerk. The plaintiff does not need to mail to defense counsel copies of motions and other papers that the plaintiff has filed with the clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are NOT filed with the clerk. The plaintiff must mail discovery requests and responses directly to counsel for the appropriate defendant. Discovery requests or responses sent to the clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until the court has entered a scheduling order, which will explain the discovery process in more detail.

8. Counsel for the defendants is hereby granted leave to depose the plaintiff. Counsel for the defendants shall arrange the time for the deposition.

9. The plaintiff shall immediately notify the court, in writing, of any change in mailing address and telephone number. The plaintiff's failure to notify the court of a change in mailing address or phone number will result in dismissal of this lawsuit.

**10. The clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

Entered this 26th day of May, 2026.

_s/Michael M. Mihm_
MICHAEL M. MIHM
UNITED STATES DISTRICT JUDGE